We will hear argument this morning in Case 19-508, AMG Capital Management v. Federal Trade Commission. Mr. Petillo? Thank you, Mr. Chief Justice, and may it please the Court. The FTC Act's text, structure, and purpose make clear that when Section 13b authorizes the Commission to seek a permanent injunction, it means just that, a permanent injunction as traditionally understood. It does not mean injunctions and all equitable relief or injunctions and monetary relief for past harms. Three features of the Act make that especially clear. First, 13b is limited to cases where someone is violating or is about to violate the Act. That limit to ongoing or imminent violations would make no sense if 13b authorized retrospective monetary relief for past harms. Second, where the Act allows relief beyond injunctions, it says so. Section 5L authorizes an injunction and provides further equitable relief as appropriate. That language would have been pointless if the word injunction itself implied all equitable relief. Third, another provision, Section 19, authorizes monetary relief for past consumer injury, but it provides safeguards, including a statute of limitations, a heightened proof requirement, and notice to victims. Those limits would be meaningless if they could be evaded under 13b. Even if there were a reasonable relief, and there should not be, those three features overcome it. To be clear, the Commission can get retrospective relief for consumer harm, but it must invoke Section 19, the mechanism Congress provided for that purpose. That makes sense. Because the Act's prohibitions are broad and general, Congress, since 1914, made agency processes the primary enforcement mechanism so the agency can apply its expertise and give businesses notice on what is prohibited. Section 13b, by contrast, is a narrow supplement for threatened harm, where the Commission must come to court to stop the conduct quickly. Where there is more time, like for backward-looking remedies, there is no reason for Congress to bypass agency responsibilities to provide guidance. Mr. Petillo, one of the issues with your reading of the statute is that it was passed roughly 50 years ago. And in the intervening years, there's been a significant change in how this court interprets statutes. Back when this one was passed, we had a pretty freewheeling approach. You know, we weren't as confined to the specific language. You sort of look at what Congress had in mind and figured out the meaning in light of that. And, of course, today we have a more disciplined approach, you know, I think more suited to our role under the Constitution. But shouldn't we construe this statute in the environment in which Congress passed it in light of the, as I said, more freewheeling approach? And I think there'd be a lot more leeway to your friend on the other side argument about an expansive reading of some of the language. So why do we sort of adopt a, I don't know what it is, view that is current to Congress today but wasn't current back then? Your Honor, I have two responses to that question. The first is that this court rejected a very similar argument in Alexander v. Sandoval. The argument was made that, listen, at the time that Title VI of the Civil Rights Act was enacted, the court at that time followed what you referred to as the more freewheeling approach to implying causes of action and applied remedies. And the court said, be that as it may, you know, we have since sworn off that method of statutory interpretation and we decline, you know, one last drink. And I think that that applies equally here, whether or not that was the mode at the time 13b was enacted, that the reasoning of Alexander v. Sandoval... Yeah, no, I know that's what we said. Maybe I just don't find that so compelling. It's just, you know, we try to look at language as it was understood in other contexts when we're interpreting provisions. You know, we go back to the, you know, 1860 treatise and say, what did that mean back then? And we don't look at a contemporary dictionary. Do you have any argument besides what we said in Sandoval? Yes, I do. The theory that Congress somehow thought permanent injunction carried with all equitable relief when it enacted 13b itself defies the three features I mentioned in my opening. In the very same legislation that it enacted 13b, Congress expressly authorized an injunction and other and further equitable relief in section 5L. So that cannot be reconciled with the notion that Congress somehow thought in the word injunction itself automatically included all equitable relief a la Porter's method of interpretation. Thank you, Counsel. Justice Thomas. Thank you, Mr. Chief Justice. Counsel, continuing along the lines of the Chief Justice, let's assume that we did not have sections 5 and 19. But you still have the same language that we have in 13. Would it be reasonable to say that Congress legislated against, in that case, in that instance, against the backdrop of cases like Porter and Mitchell? And if so, then how would that change your argument? This court looks to how equitable terms are traditionally understood. And permanent injunctions traditionally exclude monetary relief as compensation for past harm, as Great West noted. And here, the phrase 13b itself refers to a permanent injunction. And you wouldn't ordinarily think of a one-time order to turn over property as a permanent injunction. And so the specific language used in 13b itself, even without reference, but also 13b is limited to cases of imminent or ongoing harm. And it wouldn't have made any sense to link the authority for retrospective monetary relief to the availability of imminent or ongoing harm. Consumers don't become more or less worthy of redress for their injuries, depending on whether or not the conduct is ongoing. Well, with that argument, how would you address or deal with the 19th century intellectual property cases that allowed monetary relief incident to the injunction? All of those cases involved a situation where there was—the parties had a general right to seek all equitable relief. And that is simply not the case here. This case, 13b, is just limited to injunctions. So whether or not the other relief of an accounting might be available where all equitable relief is available to the plaintiff, that's not the case here. Injunction means injunction in 13b, and we know that, and it's limited by the three features of the Act that I've mentioned. Thank you. Justice Breyer? Good morning. I tell you, I thought the briefs were very good in this case. Blue brief, I think you're right. Red brief, I think you're right. They can't both be right. That's right. All right. You see, that's the old joke. But that's where I am. So, I'm pretty familiar with the arguments, and I see which way do we go. And the argument, it seems to me, that's against you—and I'll put the other half to the other side—the argument that's against you is simply this. To me, law isn't perfect. Courts make mistakes. We make mistakes, too. And this is if it is a mistake. It's been around for 50 years, and there's a pretty uniform interpretation before the Seventh Circuit. And if we never say, let bygones be bygones, I mean, we're going to be here to Marbury v. Madison and say goodbye. Why doesn't that apply? Well, Your Honor, this is the first time—the court was called to step in to resolve this conflict, and the mode of interpretation has changed over time, and when the Courts of Appeals took this approach— Wait, for my question, I'm assuming you're right on all that. Okay? My question is, still, it's close. And still, the lower courts, at least, have been uniform for 50 years. We cannot undo everything that was, in your opinion, or mine, or somebody else's, decided not perfectly and may be wrong. That's what I just asked. So why wouldn't I follow that very basic principle about courts and how the judiciary has to function in a society that's continuously changing? There are now two Courts of Appeals, one on either side—or, excuse me, there are Courts of Appeals on either side. There are now two Courts of Appeals that have rejected the notion that 13b carries with it all monetary relief. And there's simply no rule that the first Court of Appeals to issue its ruling on a particular version of the law wins. And so there's no reason to give a presumption to the Courts of Appeals that decided it first. Okay, thank you. Justice Alito? Mr. Patoa, can I ask you about the practicalities of this case? Has some of the money in question here already been distributed to the victims of this scheme? Yes. My understanding is that around $500 million has been distributed. If we rule in your favor, what will happen with respect to those individuals? Will they be required to return that money? I honestly don't know. I would be surprised if that is the result. One option would perhaps be for the Commission would have to repay us out of the Federal Judgment Fund, which is a reservoir that exists for paying liabilities of the United States. I suppose it would be up to the Commission to decide whether the United States bears the burden of its error. What is the relationship between the order in question here and the forfeiture order that was issued in the Southern District of New York in Tucker's criminal case? There he was, as I understand it, required to return $3 billion. Does that encompass the amount of money that's involved here? My understanding is that there is some overlap between the assets that were at issue. Mr. Tucker just had one pool of resources, and to date, my understanding is that the Commission and the Southern District have been divvying up the different responsibilities, but it's also worth noting here that the order in this case encompasses money paid by innocent parties such as Mrs. Tucker and Part 269, which were never alleged to have been—and that amount is over $27 million. They were never alleged to have participated in any wrongdoing, and so those assets certainly couldn't be subject to the criminal forfeiture as well. Let me turn back briefly to basically the same question that the Chief Justice asked. Most of the members of Congress are not lawyers. That was true when this provision was enacted, and even those who were lawyers, perhaps like me, never heard the word equity when they were in law school. So suppose one of those members said, well, here we're going to authorize the Commission to seek an injunction, so I'm going to look at the most recent edition of Black's Law Dictionary, which defines an injunction in part as a judicial process operating in personam and requiring a person to whom it is directed to do or refrain from doing a particular thing. If a member read that definition, wouldn't they think that it would authorize exactly what was done here? Perhaps there—injunctions are broad and flexible, and certainly, as the Court explained in Great West, with lawyerly inventiveness, just about any order could be framed in terms of an injunction. But this Court has held that it's not just what Black's Law Dictionary says. It's how the terms are traditionally understood in equity, and permanent injunctions traditionally exclude monetary relief as compensation for past harm. Thank you. I think we're— Justice Sotomayor? Counsel, you argue that there would be no reason for Congress to provide for monetary remedies under Section 19 if the FTC could obtain disgorgement under 13b. But it makes sense to me that the FTC might sometimes want to establish new rules through agency adjudications that are binding on absent parties and to which courts will defer. So the more important question for me is—and I hope you can answer it—is why would Congress authorize the FTC to seek a permanent injunction if no other equitable remedies were available? It seems that, under your understanding of the statute, why would the FTC ever pursue a permanent injunction under 13b rather than a cease-and-desist order that could lead to monetary relief? It could look for— The answer is that— Go ahead. Sometimes—I'm sorry. The answer is that 13b is a—it's a narrow supplement to the overall FTC Act, which almost every other single provision is about or in service of administrative processes. 13b exists for situations where there is threatened or ongoing harm, and it allows the Commission to come to court to stop the conduct quickly in order to give— But it could do that—it could do that with a temporary injunction, and so it doesn't need to do it with a permanent injunction. And if it's barred from getting permanent relief and remedies, why would it ever seek a permanent injunction? It would—it just—if there's no need, if it's a routine case where the agency doesn't need to pronounce, as is its statutory obligation, to define whether or not it applies to district court, it might be a quicker and more expedient remedy. But the fact is that the Act's prohibitions are broad and general, and Congress made agency processes the primary enforcement mechanism, and its job is to apply— So why even give it a permanent injunction when it wasn't, according to your reading, able to recover anything else under that process? It could always do a temporary injunction and stop impending harm that way, and then always have to pursue administrative process to get monetary relief. It makes no sense to me. Because sometimes that would be—that would be good enough. Sometimes just stopping the consumer redress in every case. And in fact, you know, for most of the—most of the FTC's early history, it had no authority to seek consumer redress whatsoever until it was enacted in Section 19. Stopping the conduct was its primary responsibility. Justice Kagan? Mr. Petillo, I'd like to go back to the Chief Justice's first questions about which approach we're supposed to use. Our old approach, which was very liberal in finding rights and remedies, or our new approach, which is decidedly not. And you said—well, Alexander v. Sandoval—and the Chief asked you to put that—the Chief Justice asked you to put that aside, and I'd like you to put that aside as well. I think it's at least arguably very different. Do you have a theoretical argument for why it is that we should be using the new approach? Because I would have thought that the whole idea behind the new approach is that what matters most is what Congress thinks about a question, not what the court thinks about it. And that that would suggest, well, we're supposed to be looking at what Congress thought in 1973, given the backdrop of all of our precedents. Well, as I mentioned, the words of the statute are the law. The words of the statute tell you what Congress intended. And even under the old approach, if we're trying to discern whether Congress thought that injunction actually meant all relief, all we need to know is that at the same time that Congress enacted 13B, it also enacted Section 5L. And at that time it expressed— So that's an argument—I mean, that's an argument on a different point, a point about what Congress would have understood back then. But I take that to be assuming my premise, which is that the very issue is—I mean, that the thing we're supposed to be figuring out is what Congress would have assumed back then, isn't it? Yes, but I think in trying to think what Congress understood about Porter and Mitchell, we have to look at what else Porter and Mitchell said. And notwithstanding Porter and Mitchell's broad language, Congress also would have known that Porter and Mitchell said, you have to look at the entire statute. And you have to see— Sorry, Mr. Petillo. Just two years before Congress enacted this legislation, the Second Circuit—you know, obviously an important circuit when it comes to these matters—held that the SEC had power to seek restitution because its statute said that the agency could seek an injunction. It's the exact same question as we're confronting. And the Second Circuit relies on Porter, relies on Mitchell, relies on all the old cases that you say are distinguishable, and says, yes, an injunction includes restitution according to Supreme Court law on the subject. So doesn't that suggest that the FTC has a pretty good point about what Congress understood in 1973? No, I don't think so. If Congress were looking to what Porter held, Porter acknowledged that if it were looking to see whether an implied remedy was—it had to look and see if the implied remedy was consistent with the statutory scheme. And Porter found that even though there was nothing that precluded an implied restitution remedy, it said, look, there is another section of the emergency price control act, and that provision addresses damages. So the fact that the statute elsewhere mentions damages supersedes the possibility that there could be an implied damages remedy. Thank you very much. Justice Gorsuch. Good morning, counsel. I'd like your help with a line-drawing problem. I think you agree that an injunction can be used to provide certain forms of equitable relief, including restitution, perhaps, and accounting, requiring a freezing of assets, or handing over a thing of value. But it can't go this far. How would you have us draw that line and describe it? I think it's a fairly simple line, and we can look to how Justice Story described it. There's a difference between the initial determination as to who owns the property, whether property should be returned, and that principle is articulated in terms of other equitable doctrines, such as restitution. Now, there were instances in the past, and these were certainly more the exception than the rule, where an injunction might be used to enforce that prior decree, where someone had already been given the award of restitution that determines the property right. And then if there was some other reason why an additional coercive remedy was needed, the injunction might issue to force that. As Justice Story explained in his treatise, that type of injunction was issued, quote, after a decree in the nature of an execution to enforce the underlying decree. And that's completely different from what the Commission seeks here. The Commission doesn't seek to use an injunction to enforce a right to restitution. It doesn't have a right to restitution under 13B. It's trying to bootstrap that. And so I think that the distinction at equity was actually pretty clear. Thank you, Counsel. Justice Kavanaugh? Thank you, Chief Justice, and good morning, Counsel. Your argument here is strikingly similar to the argument advanced in the dissent in Porter by Justice Rutledge, joined by Justices Reed and Frankfurter, and the dissent in Mitchell, written by Justice Whitaker, joined by Justices Black and Clark. The Rutledge dissent, Justice Rutledge's dissent in Porter, for example, said Congress could not have been ignorant of the remedy of restitution. It knew how to give remedies it wished to confer. There was no need to add this one, nor do I think it did so. It did not give it expressly. That kind of argument. What do we do with Porter and Mitchell if we decide this case in your favor? In other words, how should we write the opinion with respect to those cases? This Court doesn't need to overrule Porter or Mitchell any more than it needed to do so in Megrig, which held that in the context of RCRA, injunction did not mean all equitable relief. Neither Porter nor Mitchell involved the statute with the three features that I mentioned at the outset. In neither case did Congress elsewhere authorize an injunction and other and further equitable relief, making it clear that Congress didn't presume that an injunction carried with it all equitable relief. Neither Porter nor Mitchell addressed the statute limited to ongoing or threatened violations, which is the sort of thing that an injunction would address, but is totally inconsistent with backwards-looking monetary relief. And neither statute in Porter or Mitchell provided the very same monetary relief in a separate provision, here that section 19, subject to various protections like a statute of limitations, that would be rendered entirely meaningless if the Commission could implicitly get the same relief under 13B instead. So Porter and Mitchell are entirely distinguishable based on the statutory scheme. And picking up on one of Justice Breyer's questions, when you have the combination of some Congressional ratification argument and all the Court of Appeals for a number of years interpreting it in the FTC's favor, at some point does all that combine, do you think, to get us to a point of leave well enough alone? I mean, that's certainly stability in the law is important, and when you have Porter and Mitchell plus ratification plus Courts of Appeals, at some point does that kick in? I don't think so. Long-standing error doesn't make it any less error. The statute is still the statute, and now that the issue is before this Court, it's the Court's duty to give the correct interpretation of the statute, notwithstanding a long history of error. Thank you. Justice Barrett? Counsel, let's say that we agree with you about 13B. Your client, I don't understand you to be arguing that he has clean hands. I mean, he's been convicted. He has the dubious distinction of being the subject of an episode of Dirty Money on Netflix. But you suggested in your brief that because of the safeguards of Section 19, in particular, you know, the reasonable man standard, knowing and understanding that the conduct was deceptive, that the FTC couldn't have gotten a monetary remedy from him under 19. So is it your position that if we adopt your view, there's no way for the FTC to get the ill-gotten gains back from someone who has violated the law, like your client? I'm sorry. I didn't mean to suggest that the FTC could not have proven its case under Section 19, although I do think there is a substantial question about that. In Judge B's dissent in the decision below, he noted that, you know, the three judges on the Ninth Circuit had looked at the disclosures, and they thought that they were accurate, and they were not deceived by that. But notwithstanding that, the fact is that, you know, the decision here doesn't just affect my case. I think the Chamber has pointed out, and as, you know, the sweep of the FTC Act is about as broad as you can get, reaching into every single area of commerce. And it's precisely because the prohibitions of the Act are so broad and general that it's important to hold the Commission to its primary responsibility of, you know, telling businesses what the law is prospectively instead of running to court instead, you know, trying to seek retrospective monetary relief. Thank you, Counsel. A minute to wrap up. Mr. Petillo? The question here is whether 13B's reference to permanent injunction means permanent injunction, or whether it instead means all equitable relief and money for past harm. The three features of the Act that I've discussed confirm that injunction is limited to an injunction as that term was traditionally understood. To be any clearer, Congress would have to take the absurd step of saying, and by injunction, we mean only injunction, not other remedies. But this Court does not impose and never has imposed any such requirement. The FTC Act, moreover, is striking in its consistent focus on agency processes to prospectively define prohibited conduct. Yet under the Commission's view, the single Senate's second level Proviso in 13B authorizing permanent injunctions is virtually all the statute it needs. The Commission can get all the injunctives and monetary relief at once without the burdens of the administrative processes that were its very reason for being. That cannot be right. The Court should return the Commission to the limits that Congress placed on its authority. Thank you, Counsel. Mr. Marcus? Thank you, Mr. Chief Justice, and may it please the Court. The petitioners are asking you to rule that when Congress allowed the Commission to enforce the FTC Act in federal court, it intended that the Court would merely stop the violation while letting the violator keep his stolen money. Such a ruling would radically depart from the foundational principle of equity recognized just last term in lieu that wrongdoers should not profit from their own wrongdoing. It would also profoundly deviate from the understanding of injunctive remedies that was embedded in the law when Congress enacted Section 13B, as many of the Court's questions have recognized. Courts of equity have recognized since before the founding that the equitable power to issue an injunction inherently includes the power to order the return of unlawful gains. As the Court summed it up in Porter, nothing is more clearly the subject of a suit for an injunction than the recovery of that which has been illegally acquired and which has given rise to the necessity for injunctive relief. Sections 19 and 5L of the Act, which provide remedies when the Commission chooses to enforce the Act administratively, do not create an unmistakable inference that Congress intended to limit traditional equitable powers when the Commission chooses instead to proceed in court. Section 19 expressly says otherwise in the savings clauses. Section 5L serves a fundamentally different role in the Act than Section 13B. In Section 13B, the language reflects its function. A cease and desist order works like a prohibitory injunction. Congress, therefore, had to specify the additional remedies it wanted for a violation. It did not need to do that in Section 13B, but could instead invoke its understanding of the traditional equitable powers of injunction without the need for elaboration. Together, Sections 13B, 19, and 5L work in the same way to give the Commission a choice between effective enforcement pathways that can provide meaningful relief to victimized consumers. Counsel, a lot of the cases you cite in support of a broad reading of injunction and equitable powers, I think most of them involve courts, not agencies. And courts have broad, inherent equitable power. They don't sort of parse and construe their authority very carefully, at least I don't think so. But this involves an agency, and an agency only has the authority delegated to it by Congress. And I'm not sure we can assume that those precedents involving courts apply so smoothly in the context of an agency. Well, certainly the agency has whatever power Congress has accorded it, which is exactly why Congress had to be more specific when it was talking about remedies for the agency's own adjudicatory orders. But Section 5, I'm sorry, Section 13B says the Commission may seek and the court may grant a permanent injunction. So what Congress is saying there is that the Commission can invoke the court's equitable authority. And that then puts the issue squarely within the court's authority, as you just alluded to. Well, I'm not sure that follows. The agency can seek and the court can enforce doesn't mean that the same authority that a court has, the agency has, just that the court can enforce whatever authority the agency has. It doesn't say enforce. It says grant. And the court can enforce under a different provision, Section 5, the Commission's own orders. But what Section 13B is doing is it's giving the Commission the ability to go to court to seek the relief that a court can grant. This is no different than what the Price Administrator did in Porter or the Department of Labor. Your friend on the other side makes the point that injunction appears in the United States Code throughout the Code hundreds of times. And is your position that whenever it does, a broader range of equitable powers is conferred on an agency? Well, again, it's not that the power is conferred on the agency. It's that the court has inherent powers. Now, in many cases, it may be appropriate in conjunction with an injunction to engage in other types of equitable remedies. But it's not always appropriate. These are case-by-case determinations. Thank you, Counsel. Justice Thomas? Thank you, Mr. Chief Justice. Mr. Marcus, Section 13B1 says that whenever the Commission has reason to believe that a person, partnership, or corporation is violating or is about to violate any provision of law, that seems to suggest that that provision is focused on forward-looking, preventing a future or a present action. It seems that what you're doing here is using it for something that has already happened. Would you be kind enough to reconcile your position or approach with the language of 13B? I'd be happy to, Justice Thomas. Is or is about to echoes the standard for the grant of an injunction. For example, typically an injunction requires there to be ongoing or expected conduct. But once the court's equity jurisdiction has been properly invoked, the court can order associated remedies. And that's what happened in all of the 19th century intellectual property cases. In fact, in the Root case in particular, the court said, your patent has expired. Therefore, you can't seek an injunction and you cannot get a naked monetary remedy. But here, there was ongoing conduct at the time the FTC sued. The court granted an injunction. And the question is, once the court has had its authority triggered, once the court has exercised that authority, can it also engage in the traditional mechanisms of injunctive relief? And I think the answer in centuries of law is pretty clear. Would you just take a minute and explain again why, from my perspective, it seems as though what you're doing here fits more comfortably under Section 19. Would you use Section 13 rather than Section 19 again? Certainly. For one thing, it is easier to use Section 13 in many respects than it is in Section 19. But also, there are many cases where it doesn't take a lot of commission expertise to explain why a particular act is deceptive. And here, certainly, it did not take the agency, or even the U.S. government, to explain to Scott Tucker that misleading people about the terms of their loan was a deceptive act. So when the commission feels that it doesn't need to expound on the meaning and boundaries of the FTC Act, it can bring cases under Section 13. Now, keep in mind, when it does that, it gives up a bunch of stuff. It gives up the ability to find its own facts. And that's what Section 19 allows, including Section 19 allows us to sue in state court, as well as federal court. And so, it's a little bit like the choice between rulemaking and adjudication in, you know, Bell Aero space. Congress wanted the commission to have flexibility to choose between enforcement pathways. Justice Breyer? History matters. I think Justice Brandeis, when he started, was faced with a business community that was very suspicious of the FTC's power and thought it would be abused, and a progressive community that thought it's absolutely necessary to bring bad business practices under control. So they compromised. The compromise was, you've got to do what the FTC says, but before it tells you to do something, it will find that what you're doing now is wrong. It will find that. It will be a cease and desist order, under Moss Magnuson, I think, to include violation of a rule. So, Section 5, cease and desist order or violation of a rule? Ha! Damages of some kind. 19, the same thing. And now we have right in the middle, 13. No protection like that whatsoever. Do not worry, says the FTC. We will only use it in exceptional cases. Ha! In 2012, they repealed that, and 10 years later, or after this has been in effect for a few years, I read that 100 cases under this provision are in the court, compared with 10 or 12 under the regular cases. And you say it's just obvious. We're going to get those people who think their bad conduct is obvious. Look at Sketchers. Look at the Cardinal case. Go back to the famous Unburn case. Look at the case of the Constantiation. People wouldn't know that it is an unfair practice that a chiropractor was married to a wife who had some income from the company, and therefore his conclusion as to the muscle toning of the company should be discounted. And that's the kinds of cases they're bringing up. Now, do you see my point? On the one hand, it's well-established law in the lower courts. On the other hand, if we interpret it your way, we say your fears, business community, were absolutely right. It is now up to the FTC, before you know the thing is wrong, to hit you with bad damages. This case, perhaps you're right. But Sketchers, Cardinal, even Unburn, built strong bodies eight ways. That was wonder bread. They only did it six ways. I mean, you see, it's giving the FTC a hard time. You get my point. Now, I'd like to hear an answer. I do get your point, Justice Breyer. And the answer is that in 1914, when the Commission was created, there was a bargain struck. And in 1973, when consumer fraud became rampant in the economy and people were complaining about the toothless FTC, there was a new bargain struck where the Commission could go into court and make remedies in court as a litigant in the first instance. Courts are, of course, bound by principles of constitutional due process and notice. And if the court concludes that the chiropractor couldn't possibly understand what was required of him, it will find that a remedy is not available. Many of the cases that you're referring to, though, Justice Breyer, actually involve settlements that were made in the course of administrative proceedings. These things do get complicated, but those are companies that agreed to settle. Justice Alito? In answer to Justice Thomas's question, well, your answer to Justice Thomas's question leads me to ask this. If the activity here had ceased before this order was entered, would the court have been able to enter it? Well, so if the activity had ceased and there was no possibility that it could have resumed again, then the answer is typically no. Of course, there are some people who, when the FTC starts inquiring about them, they stop for the time being only to resume again later. Why would Congress draw that line? Why would it provide a restitution remedy, which is still ongoing activity, but no restitution remedy when all of the harm has already been completed? Well, because the remedy goes along with the injunctive remedy. It's inherent in the injunction that the court can issue, and that's what Congress has traditionally done. It's what it did in the 19th century patent and copyright cases. What would be the policy justification why Congress would want to have a less than complete remedy? But it's something that Congress does quite often. It still, to this day, in the Securities and Exchange Act cases, it requires an is-or-is-about-to requirement before they can get the equitable relief. We asked Mr. Petillo questions about how this provision would have been understood in 1973. There were some comments made by a former FTC official, Mr. Fitzgerald, that addresses that directly, and they are pretty damaging to your position. Mr. Fitzgerald says that when 13b was enacted, nobody on the commission imagined that it would become an important part of the commission's consumer protection program, but the commission decided that section 19 was too complex, and so it looked for a workaround, and quote, neither the text of 13b nor its legislative history disclosed the basis to argue for broad equitable relief. The commission's attorneys thought these arguments were not going to succeed, but to their surprise, they were successful. You don't say anything about Mr. Fitzgerald. Do you want to say that there was a huge body of law indicating that Congress understood what it was doing? But beyond that, what Mr. Fitzgerald's article does indicate is that in the 1970s, at the time when people were complaining that the FTC was lackadaisical about enforcement, the commission's mindset was all about rulemaking, making broad rules to govern large industrial sectors, and it did take a little while to change from a rulemaking to an enforcement perspective. But once it did, it vigorously started invoking section 13b, and as has been pointed out by the questioning, courts for 40 years now have accepted those things, and before the FTC even did this, courts had been accepting the exact same arguments in the SEC context. Thank you. Justice Sotomayor? Counsel, how do you explain section 5L, which was passed at the same time as section 13b, and separately authorizes mandatory injunctions and further equitable relief? Why would Congress use a different language for injunctive relief in one section and just stop at injunctive relief, and in the other, add and further equitable relief in a different section? Well, the textual differences in the two provisions reflect their functional differences. Section 5L is used to enforce cease and desist orders, the administrative orders, and so there already basically is an injunction on the books, and it's an injunction that doesn't come with any traditional remedies. So Congress had to say exactly what remedies it wanted, and in section 5L, Congress didn't need to do that. It could rely on, piggyback on, all of the traditional remedies inherent in a permanent injunction, which is different from a mandatory injunction. And so, you know, you could look at it that, in fact, what Congress wanted to make sure of was that no matter how the commission proceeded, whether it proceeded by administrative, by cease and desist or whether it went into court as a litigant, that each time consumers were harmed, they would have the opportunity to get redress for their victimization. Now, I'm following up slightly on Justice Alito's question. Legislative history is not unimportant to me. What am I to make of the fact that I saw nothing in the history of this bill suggesting that Congress should not have passed Section 14B authorizes monetary awards? Quite to the contrary. The prior version of what became Section 19 triggered extensive debate because there wasn't money damages available, and Section 19 was passed to remedy what was perceived as a fault in the bill as it existed. So what am I missing in terms of the absence of anything to do with this issue before Congress? Well, you are correct, Justice Sotomayor, that the legislative history of 13B itself does not explicitly address money, but there is a presumption that Congress legislates against the backdrop of the law, and the backdrop of the law of injunction really couldn't be clearer. Now, when it comes to the issue of money, one of the issues in Section 19 had to do with the Commission's own ability to order monetary remedies in its own administrative processes. It's part of a cease and desist order. As Section 19 was being debated, the Ninth Circuit ruled in the Heeter case, which is cited in our brief, that the Commission could not order monetary remedies. Mr. Marcus, it seems to me that the best argument against your position, and it's a strong one, comes from Section 5 and Section 19, which have these protections in them that Section 13 do not, that there has to be a repeated violation, that there has to be a certain kind of mens rea and so forth. I mean, you say, well, this is a choice. There are two pathways of different kinds of administrative action. But what seems significant about those two pathways, as you've laid them out, is that one is so clearly better from the agency's perspective. And so I'm wondering if that's the kind of choice that Congress really gave to the agency. Justice Breyer was describing in his answer to me, which was a fear of Congress that an agency would have too much power. And Congress gave the Commission the ability to address economy-wide practices under fairly broad terms. And it was concerned that the agency was going to declare novel practices to be deceptive or unfair or misleading. And so Congress was understandably concerned and therefore included procedural protections in the provisions regarding relief for agency processes. But that's exactly why we should maintain the integrity of those protections rather than your interpretation, which essentially makes them irrelevant. It just makes one pathway more attractive in certain instances than another. But if the Commission does encounter a novel practice or if the Commission wishes to make its own fact-finding in particularly complicated cases or difficult cases, then it can do that only in the administrative pathway. So it's not just a freebie. The Commission has to give something up when it happens. There's a lot of cases that we deal with that are not particularly complicated and that do not require a lot of explanation of what deception is. There are scams that run amok all over the place. It's happening all the time. Just going back to Justice Breyer's numbers, can you give me any sense of the empirics of this, how often the FTC uses the cease and desist order route as well? I don't have exact numbers for you, Justice Kagan, but in most antitrust cases, the Commission uses the administrative route. In at least several cases a year, the Commission uses the administrative route in consumer protection cases. But there's no question that the agency brings far more cases in court than it does in the administrative process. Oh, counsel, finish your answer. I'm interested. Oh, thank you. That largely reflects the kind of basic deceptiveness of much of the stuff that we deal with on the consumer protection side. Well, let's focus on the consumer protection side because I think the antitrust side, there are a lot more standards out there that people are familiar with. The FTC was set up in part to enact rules about deceptive conduct. It chose not to go that route, preferred an enforcement route. And recognizing that a term like deceptive practices in Section 5 is not exactly self-defining and may lack some of the substance that we now have, at least under the Sherman Act and in the antitrust context, laid out a bunch of rules that have been taken away. We've all kind of wandered around this question, but I think our core concern is you're rendering those protections superfluous, that there's very little incentive for the agency to ever comply with them. And it's just another step away from what Congress had anticipated would be a regulatory regime that's never materialized. And certainly, Justice Gorsuch, Congress did seem to recognize the issue, and that's why it included savings clauses in Section 19. You know, I don't see much other explanation for very broad provisions that clearly on their face say this is in addition to other remedies and you can't use the existence of this provision to interpret that. Let me put the question a different way. What incentive does the commission have today to use Section 19? The commission has the incentives that I've discussed, which are if it wishes to engage in its own fact-finding and draw its own legal conclusions to it, just as it can come up with rules defining what unfair trade practices are, but chooses not to do so. Well, it does. I mean, so it doesn't do it as often, but it does do it. And so that proves that there are cases where the commission thinks we need to take this one. This one's difficult enough. This one's uncertain when it goes to federal court. Now, some would say that it's actually better to have a commission litigating cases in federal court than it is to have the commission making broad-based rules that may apply to the non-parties. Justice Kavanaugh? Thank you, Chief Justice, and good morning, Mr. Marcus. Good to be with you again. Thank you for the excellent report that you just read. You obviously put forward good arguments on Porter and the court's precedent and Congress's intent, as well as the body of court of appeals cases. But it seems that the problem you have is the text. And in that sense, this case really is a separation of powers case. I worked in the executive branch for many years, so I understand you want to do good things and prevent or punish bad things, and sometimes your statutory authority is borderline, and it could be war policy or immigration or environmental or what have you. But with good intentions, the agency pushes the envelope and stretches the statutory language to do the good or prevent the bad. The problem is this results in a transfer of power from Congress to the agency, which is a particular concern, at least for me, with independent agencies. Now, why isn't the answer here for the agency to seek this new authority for Congress for us to maintain the principle that separation of powers, that the agency should stick to the authority in the text and not go beyond that? A 30,000-foot question. Interested in your responses to that? Well, so, again, the question, the real question is, what was Congress's intent when it gave the commission the authority to seek a permanent injunction in federal court? And if it intended to accord the agency the ability to go out to court for all of the inherent equitable remedies, then I think that resolves your concern about separation of powers issues. And, you know, again, it couldn't be clearer to me that the agency, under the backdrop of injunctions, would have had the intent to accord all the traditional equitable remedies. And, you know, this is not a new question. Even, you know, in the California versus American stories case you cite in our brief, the court held that injunction, as used in the Clayton Act, indicates Congress's intention that traditional principles of equity govern the grant of a permanent injunction. So I think that your concern is a valid one but is resolved if you look at what Congress would have understood the words to mean when it used them. And there was, in fact, a common understanding of what injunction meant in 1973. Appreciate it, Mr. Marcus. Thank you. Justice Barrett? Counsel, the damages award here, or the money at stake is collected from Mr. Tucker's wife. And when Justice Alito asked Mr. Petillo how much of that had been distributed to the victims, he said about $500 million. So I take it the rest of that is in the Treasury or does the FTC have it right now? So I'm glad you asked that question, Justice Barrett. I will get you a clarification on what Mr. Petillo said because the money that's actually been distributed to the victims is the judgment defendant, not Tucker, not Mrs. Tucker, not any of the petitioners before this court. It comes from a bank that settled separately with the government and agreed to a restitution remedy in the criminal case that the Justice Department then turned over to the FTC to distribute to consumers. So none of that money is the judgment in this particular case. So right now there is some money that is being held in an account separately for redress should the commission ultimately wind up with the ability to distribute that money. How much money in that account compared to the $1.3 billion? I don't know the exact number, but it's tens of millions. It's a lot of money. But this is what I'm getting at. It seems to me that equitable remedies attempt to restore the plaintiff to the position in which the plaintiff stood before the plaintiff was defrauded. This money isn't traceable back to the SEC, and the money that's gained isn't all being distributed to the plaintiffs. So it seems like it functions almost more like a fine. It doesn't really seem analogous to, say, restitution to me. But the point here is that it's an equitable remedy meant to restore the victims to the place that they were in before they were ripped off. But if the victims don't get the money, or if all the money is not traceable to the victims, then all the money is not remedying that wrong. Well, no, we know who the victims were, and we know how much was stolen from them, and we know from this case whether we are allowed to give back the money and then basically cutting checks to everybody. Right now, the money is being held in safekeeping. So the full $1.3 billion will be distributed to the victims? As much of it as we can get, yes. We're not going to get $1.3 billion. A lot of it was spent, and it doesn't exist anymore. Tucker is now saying, well, we're going to give back the cars, whatever, assets that were seized and are being held basically in trust. Thank you, counsel. My time has expired. A minute to wrap up, Mr. Marcus. Thank you, Chief Justice. I want to reiterate that a court with the power of injunction sits as a court of equity. A court should not give back the money that they took unlawfully. AMG asks the court to disregard that principle, but the court should have that principle firmly in mind when it decides this case. It should uphold the history and tradition and affirm once again that a permanent injunction includes the power to restore victim money that was wrongfully taken from them. And I don't think the court should allow that principle to rise to the level of an unmistakable inference, which is the standard that is required under Porter. So the court should affirm the judgment below. Thank you. Thank you, counsel. A rebuttal, Mr. Petillo? I heard the commission say that this case should be decided by looking at Congress's intent when it enacted 13B. And the way we determine that is by looking at the statute's meaning. Even if in certain cases like Porter and Mitchell, that term might be construed to carry with it other equitable remedies, we know that's not the case here. Even under Porter and Mitchell, Porter and Mitchell make clear that you must look at the statute and ask if another feature impliedly precludes broader relief. The commission believes that the same damages remedy was sufficient for the court to conclude that it should not also imply that same damages remedy into the provision at issue. That is precisely what the commission is trying to do here. It is trying to get precisely the same relief that would have been available under 5L, injunctions and other equitable relief. It's trying to get precisely the same relief that would have been available under 5L, injunctions and other equitable remedy. I hear you, Mr. Petillo. Why is it that one pathway might be more attractive? Of course it's going to be more attractive for the commission to proceed under section 13 and section 19 where it doesn't have to comply with, for example, the heightened proof requirement. I didn't hear a single limitation. The limitations period is something that Megrigg pointed out. It would be truly striking for a statute to award retrospective monetary relief but not include a statute of limitations. That applies equally here, but even more so when you consider what the commission's core mission is here. The commission first investigated this conduct. It first asked Mr. Tucker about this. Now, if it were following the prescriptions that Congress provided in 2002, if it thought that there was something wrong with the disclosures, it should have gone in then. It should have sought to bring a stop to it. It should have gone to administrative processes to make clear that this particular remedy or, excuse me, that these particular disclosures, which are widespread in the United States, are not appropriate. The commission's core mission of providing prospective guidance to business about what conduct is prohibited is so important. It's exactly what Congress intended, and the entire structure of the commission's mission is being altered by it choosing to go down the easy path of racking up huge judgments under 13B without the recommendation of Congress. I would ask that the judgment of the Court of Appeals be reversed. Thank you, Counsel. The case is submitted.